UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- X

PURE DIETS INDIA LIMITED and ORGANIC : 
FOODS DMCC, :
 :
                       Plaintiff, :
 :
         -against- :
 :
GENCO n/k/a FEDEX SUPPLY CHAIN, INC, :
 :
              Defendant. :

------------------------------------------------------------- X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:__2/4/2019___

18-CV-3086 (VEC)

OPINION & ORDER

VALERIE CAPRONI, United States District Judge:

      Plaintiffs Pure Diets India Ltd. ("Pure Diets India") and Organic Foods DMCC ("Organic Foods") (together, "Plaintiffs"), global sellers and suppliers of organic sugar, brought this action against Defendant Genco, now known as FedEx Supply Chain, Inc. ("Genco"), alleging that Genco breached a contract to import sugar into the United States by failing to manage properly the sugar's clearance through U.S. Customs. *See* Dkt. 14 (Am. Compl.). Plaintiffs assert claims for breach of contract, quasi-contract, negligent misrepresentation, and negligence. *Id.* ¶¶ 27-46. Genco has moved to dismiss all of Plaintiffs' claims under Fed. R. Civ. P. 12(b)(6). *See* Dkts. 17-18. Defendant's motion is GRANTED IN PART and DENIED IN PART.

## BACKGROUND[1]

      Plaintiffs Pure Diets India and Organic Foods, foreign corporations headquartered in New Delhi and Dubai respectively, are affiliated sellers and suppliers of organic sugar under the common ownership and control of the Pure Life Group. Dkt. 14 (Am. Compl.) ¶¶ 1-3. Genco, now known as FedEx, is a supply-chain and shipping-logistics company headquartered in

---

[1]     The Court draws the following factual background from the Amended Complaint and accepts Plaintiffs' allegations as true. *See, e.g.*, *Gibbons v. Malone*, 703 F.3d 595, 599 (2d Cir. 2013).

Pittsburgh. *Id.* ¶ 5. Because the Amended Complaint refers to Defendant as Genco rather than as FedEx, this order will, for continuity's sake, refer to Defendant as Genco.

In February 2015, Pure Diets India sold 6,900 metric tons of organic sugar to Organic Foods. Dkt. 14 (Am. Compl.) ¶ 9. The next day, Organic Foods agreed to sell the same 6,900 metric tons of sugar to a non-party customer, Royal Ingredients, LLC ("Royal"). *Id.* ¶ 11. Under the Organic Foods–Royal purchase agreement, Organic Foods was required to arrange for the sugar to be cleared through U.S. Customs and delivered to Royal's warehouses, where Royal would accept delivery. *Id.* The agreement also specified that the sugar would be delivered in time to be eligible for a reduced duty for organic sugar that the U.S. Department of Agriculture ("U.S.D.A.") had authorized for April 2015. *Id.*

Organic Foods's agreement to purchase the sugar from Pure Diets India obligated Pure Diets India to arrange for the sugar to enter the United States, clear U.S. Customs such that it would be eligible for the reduced duty, and be trucked from the port of entry to Royal's warehouse. Dkt. 14 (Am. Compl.) ¶ 10. To that end, Pure Diets India entered into a third agreement with non-party Worldwide Container Shipping Pvt. Ltd. ("WCS"), a freight forwarder headquartered in New Delhi. *Id.* ¶¶ 4, 10. WCS agreed to undertake all logistics necessary for the sugar to be shipped to the United States and timely delivered to Royal. *Id.* ¶ 13. Those logistics included clearance through U.S. Customs and the timely filing of an application for the sugar to be subject to U.S.D.A.'s reduced-duty program. *Id.*

Enter Defendant Genco. From February 5 to February 10, 2015, WCS communicated with Genco via email and phone regarding the possibility that Genco might perform the logistical services WCS had agreed to undertake on Pure Diets India's behalf. Dkt. 14 (Am. Compl.) ¶¶ 14-16. During these discussions, as the Amended Complaint puts it, "Genco was advised

and/or made aware that WCS was acting as the agent for Pure Diets India as a disclosed principal," such that "Genco knew, or should have known, that the services it was discussing with WCS . . . were intended for Pure Diets' benefit . . . ." *Id.* ¶ 17.  Genco was also made aware "that Pure Diets would not have any involvement in cargo entry and customs clearance and that Pure Diets, via WCS, would rely entirely on Genco to take all necessary and timely steps to have the subject cargo cleared through U.S. Customs pursuant to the April 2015 U.S. reduced duty tranche for organic sugar, and then delivered to . . . Organic's customer, Royal." *Id.* ¶ 18. Genco, for its part, told WCS that it "had the requisite experience, licenses, staffing and transportation network" to complete the logistics services necessary to deliver the sugar on time. *Id.* ¶ 19.  Relying on Genco's representations, WCS agreed to have Genco arrange for the sugar's delivery to Royal—including clearing it through U.S. Customs and timely filing an application for the sugar to be subject to U.S.D.A.'s reduced-duty program.  *Id.* ¶ 21.

     In March 2015, the sugar began arriving by ship on the east and west coasts of the United States.  Dkt. 14 (Am. Compl.) ¶ 22.  Genco, however, failed to shepherd the sugar, or at least some portion of it, through U.S. Customs such that it was eligible for the reduced duty.  *Id.* ¶ 23-24.  The precise nature of this failure is not altogether clear from Plaintiffs' complaint, but it appears that because of Genco's "failure to timely and competently provide the Logistics Services" it had agreed to provide, "the shipment of 6,900 metric tons of organic sugar, or a significant portion thereof, was extensively delayed and/or denied entry to the United States, within the April 2015 U.S. reduced duty tranche for organic sugar, due to delays in arrangements to transport and store in bonded warehouses that portion of the 6,900 metric tons of organic sugar cargo that was for the April 2015 reduced duty tranche including delay in transport after the tranche allocation and release by customs."  *Id.* ¶ 24.  Because of these delays, Pure Diets

India and Organic Foods became liable for demurrage and detention fees, excessive warehouse charges, and other increased expenses to the tune of $951,567. *Id.* ¶ 25. Moreover, in response to the sugar-delivery snafu, Royal reduced the volume of sugar it purchased from Organic Foods for the remainder of 2015 and declined to purchase any sugar from Organic Foods from 2016 onward. *Id.* Pure Diets India, in turn, sold less sugar to Organic Foods to be supplied to Royal. *Id.* As a result, in addition to the $951,567 in demurrage fees and other expenses, both companies allege they suffered lost sales and profits. *Id.*

In May 2018, WCS assigned to Pure Diets India any claims it might have against Genco regarding the latter's alleged failure to timely deliver the sugar. Dkt. 14 (Am. Compl.) ¶ 26. Pure Diets India and Organic Foods then brought this action against Genco, asserting (1) breach of a contract between Genco and Pure Diets India entered into by WCS as Pure Diets India's agent, resulting in damages to Pure Diets India, Organic Foods, and, possibly, WCS; (2) the existence a quasi-contract between Genco and WCS obligating Genco to compensate Pure Diets India and Organic Foods for their losses resulting from the alleged sugar snafu; (3) negligent misrepresentations by Genco regarding its ability to arrange for the sugar's timely delivery, on which Pure Diets India's agent WCS reasonably relied; and (4) negligence by Genco in arranging for the sugar's timely delivery, resulting in damages to Pure Diets India. *Id.* ¶¶ 27-46. Genco moved to dismiss each claim under Fed. R. Civ. P. 12(b)(6). *See* Dkts. 17-19.

## DISCUSSION

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must allege sufficient facts, taken as true, to state a plausible claim for relief." *Johnson v. Priceline.com, Inc.*, 711 F.3d 271, 275 (2d Cir. 2013) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)). When considering a Rule 12(b)(6) motion, the Court accepts all factual allegations in the complaint as

true and draws all reasonable inferences in the light most favorable to the plaintiff. *See Gibbons*, 703 F.3d at 599. "[T]o survive a motion under Rule 12(b)(6), a complaint does not need to contain detailed or elaborate factual allegations, but only allegations sufficient to raise an entitlement to relief above the speculative level." *Keiler v. Harlequin Enters., Ltd.*, 751 F.3d 64, 70 (2d Cir. 2014) (citation omitted).

I.     **Genco's Contention That Pure Diets India's Statements in Other Court Proceedings Foreclose Plaintiffs' Suit Against Genco**

Before addressing whether each of Plaintiffs' claims pleads a plausible entitlement to relief, the Court will address Genco's threshold argument that Plaintiff Pure Diets India's "own previous allegations and statements" in two prior litigations—one in the Eastern District of Wisconsin, the other in India—"preclude Plaintiffs' efforts here to shift liability to [Genco]." Dkt. 18 (Mem. in Supp. of MTD) at 2-7 (capitalization altered). The Court rejects Genco's argument.

In its motion to dismiss, Genco points out that in 2015, Pure Diets India filed a criminal complaint against WCS in India alleging that, under a 2010 agreement between the two companies, WCS was liable to Pure Diets India for the $951,567 in demurrage and other costs Plaintiffs incurred because of the delay in importing the sugar at issue in this case. Dkt. 18 (Mem. in Supp. of MTD) at 3-4; *see also* Dkt. 19 ex. A (India Crim. Compl.). Genco also points to an April 2016 brief that Pure Diets India filed in the Eastern District of Wisconsin in support of a petition for an order permitting Pure Diets India to take discovery from Genco in connection with litigation in India. *Id.* at 5; *see also* Dkt. 19 ex. B (E.D. Wis. Br.). This brief, according to Genco, asserted that WCS, not Genco, is liable for Plaintiffs' damages resulting from the sugar-shipment snafu. Dkt. 18 (Mem. in Supp. of MTD) at 5. According to Genco, Pure Diets India's allegations in those two documents that *WCS* is liable for any damages caused by Genco's failure

to timely deliver the sugar "precludes" the Amended Complaint's theory that *Genco* is liable for such damages. *Id.* at 6-7. For that reason, Genco contends, the entire complaint must be dismissed. *Id.* at 7.

The Court disagrees. Even if Pure Diets India's prior statements contradict the Amended Complaint's allegations and could be held to "preclude" Plaintiffs' suit altogether—Genco does not, the Court notes, actually argue that any kind of issue or claim preclusion applies here—those statements are not, contrary to Genco's argument, judicially noticeable for that purpose. In resolving a motion to dismiss, a Court ordinarily "must limit" its review "to facts stated in the complaint or in documents attached to the complaint as exhibits or incorporated in the complaint by reference." *Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir. 1991). It may, however, also consider "facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence" and, consequently, disregard "allegations in a complaint that contradict or are inconsistent with judicially-noticed facts." *Becker v. Cephalon, Inc.*, No. 14-CV-3864, 2015 WL 5472311, at *3, 5 (S.D.N.Y. Sept. 15, 2015) (internal quotation marks omitted). According to Rule 201, the Court may only take judicial notice of facts outside the record that are "not subject to reasonable dispute." Fed. R. Evid. 201(b); *see also, e.g.*, *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir. 1998). And "[b]ecause the effect of judicial notice is to deprive a party of the opportunity to use rebuttal evidence, cross-examination, and argument to attack contrary evidence," caution must be taken in granting it. *Int'l Star*, 146 F.3d at 70.

The "facts" that Pure Diets India alleged in its criminal complaint and in its briefing in the Eastern District of Wisconsin are not judicially noticeable facts under Rule 201, at least not for the purpose of "precluding" Plaintiffs' lawsuit against Genco. The Second Circuit has made

clear that a "court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." *Int'l Star*, 146 F.3d at 70 (internal quotation marks omitted); *see also, e.g.*, *Manta Indus., Ltd. v. TD Bank, N.A.*, No. 17-CV-2495, 2018 WL 2084167 , at *6 ("In the Rule 12(b)(6) context, a court may take judicial notice of prior pleadings, orders, judgments, and other related documents that appear in the court records of prior litigation and that relate to the case *sub judice*. . . . In taking judicial notice of documents or information in this setting, however, a court should do so only for the fact that they exist and what is in them, but not for their truth, because they are public documents." (internal quotation marks and alterations omitted)).  It is for this forbidden purpose, however, that Genco asks the Court to judicially notice Pure Diets India's prior pleadings.  *See* Dkt. 18 (Mem. in Supp. of MTD) at 6-7 (arguing that "Plaintiffs cannot escape their prior, contradictory allegations and statements" regarding WCS's liability relative to Genco's).  The Court therefore refuses to take judicial notice of the documents and will not consider them in determining whether Plaintiffs' Amended Complaint states a plausible entitlement to relief.  And because the Court will not judicially notice the documents, they supply no basis for dismissing the Amended Complaint.[2]

---

[2]    None of the authorities Genco cites involved the bright-line rule against judicially noticing pleadings in other litigations for the truth of the allegations therein. *See Becker*, 2015 WL 5472311, at *3 (taking judicial notice of an FDA-approved drug label in a suit alleging that drug manufacturer failed to warn of severe side effects); *TR 39th St. Land Corp. v. Salsa Distrib. USA, LLC*, No. 11-CV-7193, 2015 WL 1499173, at *5 (S.D.N.Y. Mar. 25, 2015) (not involving doctrine of judicial notice at all, and in any case involving a party's prior factual statements in the same proceeding); *Barberan v. Nationpoint*, 706 F. Supp. 2d 408, 415 (S.D.N.Y. 2010) (refusing to take judicial notice of mortgage documents in suit under Truth In Lending Act where plaintiff contested documents' authenticity); *Kimso Apartments, LLC v. Gandhi*, 23 N.E.3d 1008, 1014 (N.Y. 2014) (not involving doctrine of judicial notice at all, and in any case involving parties' prior factual statements in the same proceeding).  Those cases are therefore inapposite.  The Court notes, however, that Pure Diets India's allegations in its criminal complaint and Wisconsin briefing *may* be admissible as evidence favoring Genco at later stages of this litigation. *See Hausler v. JP Morgan Chase Bank, N.A.*, 127 F. Supp. 3d 17, 37 (S.D.N.Y. 2015) ("[A] court may still consider a judicial admission as evidence in another case.  Such evidence may, however, be contradicted by other evidence when presented." (emphasis and brackets omitted)).  The Court expresses no opinion on that question here.

## II.     Breach-of-Contract Claim

To state a breach-of-contract claim under New York law, Plaintiffs must plausibly plead "(1) the existence of a contract, (2) adequate performance of the contract by the plaintiff, (3) breach of the contract by the defendant, and (4) damages resulting from the breach." *Rex Med. L.P. v. Angiotech Pharm. (US), Inc.*, 754 F. Supp. 2d 616, 623 (S.D.N.Y. 2010).

At the threshold, the Court resolves Plaintiffs' request that it consider several documents Plaintiffs append to their opposition to Genco's motion, consisting of several emails between WCS and Genco personnel regarding the latter's ability to deliver a portion of the 6,900 metric tons of sugar so that the sugar would be eligible for U.S.D.A.'s reduced-duty program. *See* Dkt. 24 (Mem. in Opp. to MTD) at 16-17; *see also id.* ex. A (emails).  Plaintiffs referenced these email communications in their Amended Complaint, *see* Dkt. 14 (Am. Compl.) ¶¶ 14-21, and Genco apparently agrees that they should be considered as it relies on the emails in its reply brief, *see* Dkt. 25 (Reply in Supp. of MTD) at 5.  The Court will therefore consider the emails in resolving Genco's motion, "not to prove the truth of their contents but only to determine what the documents stated." *See, e.g.*, *Kramer*, 937 F.2d at 773-74.

Count One of the Amended Complaint states a plausible claim for breach of a contract, but only as between Genco and Pure Diets India.  The Amended Complaint alleges that Genco promised WCS—itself acting as a disclosed agent for Pure Diets India—that Genco would

---

In that connection, because the Court refuses to take judicial notice of the truth of the matters asserted in Pure Diets India's prior court filings, the Court need not address the parties' extensive back-and-forth over whether Pure Diets India's allegations in those filings are inconsistent with those in the Amended Complaint.  *See* Dkt. 18 (Mem. in Supp. of MTD) at 3-6; Dkt. 24 (Mem. in Opp. to MTD) at 10-16; Dkt. 25 (Reply in Supp. of MTD) at 2-3.

Finally, the Court reiterates that Genco does *not* assert that Pure Diets India's allegations in the prior litigations "precludes" this one in the *res judicata* sense of that term.  18 Charles Alan Wright et al., Federal Practice & Procedure § 4402 (3d ed. 1998) ("[T]he broad 'res judicata' phrase refers to the distinctive effects of a judgment separately characterized as 'claim preclusion' and 'issue preclusion.'").  As far as this Court is aware, there is no prior judgment that can preclude this lawsuit.  *See id.* § 4404 ("Res judicata arises from a judgment.").

ensure the sugar's "timely clearance . . . with U.S. Customs for initial entry" into the United

States and the "timely preparation and submission of [an] application to U.S. Customs" for the

sugar to be subject to "the April 2015 U.S reduced duty tranche for refined sugar."  Dkt. 14 (Am.

Compl.) ¶ 21.  The Complaint furthermore alleges that "due to delays in arrangements to

transport and store in bonded warehouses that portion" of the sugar intended "for the April 2015

reduced duty" program, a significant portion of the sugar "was extensively delayed and/or denied

entry to the United States" on the schedule to which Genco had agreed.  *Id.* ¶ 24.  Pure Diets

India became liable for nearly a million dollars in shipping costs as a result.  *Id.* ¶ 25.  In short,

according to the Complaint, Genco promised to deliver the sugar such that it would be subject to

a reduced duty, but it failed to do so, harming Pure Diets India.  That is a plausible theory of

breach of contract.

 Genco's principal contrary argument is that the Amended Complaint fails to "identify, in

non-conclusory fashion, the specific terms of the contract that [Genco] has breached,'" Dkt. 18

(Mem. in Supp. of MTD) at 7 (quoting *Spinelli v. Nat'l Football League*, 96 F. Supp. 3d 81, 131

(S.D.N.Y. 2015)), such that the breach-of-contract claim "must be dismissed as 'too indefinite,

and therefore, unenforceable," *id.* at 7-8 (quoting *Caniglia v. Chi. Tribune-N.Y. News Syndicate,

Inc.*, 612 N.Y.S.2d 146, 147 (N.Y. App. Div. 1994)).  In fact, the Amended Complaint does

"allege, in nonconclusory language, as required, the essential terms of the parties' purported . . .

contract, including those specific provisions of the contract upon which liability is predicated,"

*Caniglia*, 612 N.Y.S.2d at 147: it alleges that Genco promised WCS (acting as Pure Diets India's

disclosed agent) that Genco would shepherd through U.S. Customs a portion of the sugar and

ensure that portion would be eligible for a time-limited reduced-duty program.  *See* Dkt. 14 (Am.

Compl.) ¶¶ 16-21 ("Genco, in turn, agreed and undertook to perform, and/or arrange

performance of, . . . timely clearance of the containers with U.S. Customs for initial entry . . . [and] timely preparation and submission of the application to U.S. Customs for the April 2015 U.S. reduced duty tranche for refined sugar."). The Complaint further alleges that the sugar for which Genco was responsible was *not* delivered and cleared through U.S. Customs on a timely basis, such that some or all of the sugar did not receive the benefit of the reduced duty. *See* Dkt. 14 (Am. Compl.) ¶¶ 22-24. These allegations may not be granular, but they are not insufficiently specific.[3]

Genco next contends that the breach-of-contract claim is defective because it "fails to allege that WCS performed its obligations under the alleged oral arrangement." *See* Dkt. 18 (Mem. in Supp. of MTD) at 8-9. On the contrary: Paragraph 28 of the Amended Complaint alleges that "Plaintiff Pure Diets and/or its assignor WCS performed all obligations required to be performed by them under the agreement between Genco and WCS, in that they transported, or caused to be transported, 6,900 metric tons of sugar for importation to the United States via ocean going vessels." Dkt. 14 (Am. Compl.) ¶ 28. Though far from a model of clarity, this allegation is adequate. *See O.F.I. Imps. Inc. v. Gen. Elec. Capital Corp.*, No. 15-CV-7231, 2017 WL 3084901, at *4-6 (S.D.N.Y. July 20, 2017) (applying Fed. R. Civ. P. 8's plausibility

---

[3]    Because the Court cannot consider Pure Diets India's criminal complaint and briefing in the Eastern District of Wisconsin, *see supra* Pt. I, the Court will not engage with Genco's contention that the Amended Complaint "fail[s] to provide any allegation whatsoever as to . . . any term by which [Genco] assumed any liability for [Plaintiffs'] damages, particularly given Pure Diets India's prior assertions [in the criminal complaint and Wisconsin briefing] that WCS always remained the party fully responsible and liable to Pure Diets India for any such damages, regardless of whether it subcontracted some of its obligations " to Genco. Dkt. 25 (Reply in Supp. of MTD) at 4. To the extent Genco suggests that it cannot be liable to Pure Diets for any breach of the agreement between Genco and WCS, the Amended Complaint specifically alleges—and the emails Plaintiffs append to their opposition to Genco's motion plausibly demonstrate—that WCS entered into an agreement with Genco on behalf of Pure Diets India and as its disclosed agent. *See* Dkt. 14 (Am. Compl.) ¶¶ 17-19; Dkt. 24 ex. A (email from WCS personnel to Genco personnel clarifying "that Pure life will not do anything on these clearance" and that "[w]e have to arrange everything on behalf of them and deliver the cargo to the warehouses"). Under New York law, therefore, taking Plaintiffs' allegations as true, Genco is liable to Pure Diets for any breach of Genco's agreement with WCS. *See, e.g.*, *IMG Fragrance Brands, LLC v. Houbigant, Inc.*, 759 F. Supp. 2d 363, 375 (S.D.N.Y. 2010) (citing *Merrick v. N.Y. Subways Adver. Co.*, 178 N.Y.S.2d 814, 818 (N.Y. Sup. Ct. 1958)) ("[A] principal can sue on a contract entered into by his agent on his behalf.").

standard to general allegations regarding fulfillment of conditions precedent under Fed. R. Civ.

P. 9(c)).  Plaintiffs plausibly allege that Pure Diets India and its agent WCS arranged for the

sugar to reach the United States by ship, thereby triggering Genco's alleged obligation to ensure

that the sugar cleared U.S. Customs in time for it to be subject to a reduced duty.  Thus,

Paragraph 28 provides sufficient facts from which the Court can draw the reasonable inference

that WCS, acting as Pure Diets India's agent, adequately performed its obligations under the

WCS–Genco agreement.  *O.F.I. Imports Inc.*, 2017 WL 3084901, at *6 (quoting *Ashcroft v.

Iqbal*, 556 U.S. 662, 678 (2009)).[4]

Finally, Genco asserts that Plaintiffs' breach-of-contract claim must be dismissed because

"there is no privity between Plaintiffs and [Genco] in connection with the purported alleged oral

arrangement between WCS and [Genco]."  Dkt. 18 (Mem. in Supp. of MTD) at 9-10.  As noted,

however, *see supra* n.3, the Amended Complaint plausibly alleges—and the emails Plaintiffs

append to their opposition to Genco's motion support—that WCS entered into its agreement with

Genco on Pure Diets India's behalf and as its disclosed agent, such that Genco is liable to Pure

Diets India for any breach of the WCS–Genco agreement.  *See* Dkt. 14 (Am. Compl.) ¶¶ 17-19;

Dkt. 24 ex. A (email from WCS personnel to Genco personnel clarifying "that Pure life will not

do anything on these clearance" and that "[w]e have to arrange everything on behalf of them and

deliver the cargo to the warehouses"); *see also, e.g.*, *IMG Fragrance Brands, LLC*, 759 F. Supp.

2d at 375 (citing *Merrick*, 178 N.Y.S.2d at 818) ("[A] principal can sue on a contract entered into

by his agent on his behalf."); *City Sch. Dist. v. Hugh Stubbins & Assocs., Inc.*, 650 N.E.2d 399,

---

[4]      Genco attacks Paragraph 28's allegations as implausible because "any contract for sugar importation
necessarily would have required WCS to provide significant paperwork, meet various deadlines, and provide various
timely communications."  Dkt. 25 (Reply in Supp. of MTD) at 5.  In the absence of allegations that Plaintiffs'
fulfilled these purported obligations, Genco suggests, the Amended Complaint fails to plausibly plead adequate
performance.  *Id.*  This argument asks the Court to draw inferences in Genco's, rather than Plaintiffs', favor; that is,
of course, not permissible on a motion to dismiss.

401 (N.Y. 1995) (holding plaintiff in privity with subcontractor where "plaintiff was the intended beneficiary of the contract" and "[t]hat fact . . . was known to all parties at the time the contracts were negotiated"). At a minimum, then, Pure Diets India has a plausible breach-of-contract claim against Genco.[5]

Privity between Genco and Pure Diets India, however, does not by itself confer a viable breach-of-contract claim on Organic Foods. Although the Amended Complaint asserts that Genco's alleged breach of the purported agreement between Pure Diets India and WCS injured Organic Foods, *see* Dkt. 14 (Am. Compl.) ¶ 31, neither the Amended Complaint nor Plaintiffs' opposition to Genco's motion alleges any facts that might establish a basis for privity between Organic Foods and Genco. In the absence of privity, Count One must be dismissed to the extent it purports to state a breach-of-contract claim by Organic Foods against Genco.

The Court also dismisses Count One to the extent it purports to plead a standalone breach-of-contract claim by non-party WCS against Genco. Although Count One itself does not appear to assert a claim by WCS against Genco (brought by Plaintiffs as WCS's assignor), Plaintiffs suggest in their opposition to Genco's motion that Count One is intended to assert, in part, a standalone claim on WCS's behalf, *see* Dkt. 24 (Mem. in Opp. to MTD) at 20 ("Defendant's privity case law is moot since Plaintiffs stands [*sic*] in WCS' shoes because all right, title and interest in any claims against [Genco] were assigned to Plaintiffs."). To the extent Plaintiffs really intend to assert a breach-of-contract claim by WCS against Genco, their

---

[5]  Again, because the Court cannot consider Pure Diets India's criminal complaint and Wisconsin briefing, *see supra* Pt. I, the Court rejects Genco's privity argument to the extent it rests on purported contradictions between the facts asserted in documents and the facts asserted in the Amended Complaint, *see* Dkt. 18 (Mem. in Supp. of MTD) at 9-10; Dkt. 25 (Reply in Supp. of MTD) at 5-6.

In its reply, Genco asserts that "Plaintiffs have not established standing to sue for breach of contract." Dkt. 25 (Reply in Supp. of MTD) at 5. The Court does not understand this argument as a challenge to Plaintiffs' Article III standing to bring a breach-of-contract claim. Nor does the Court see any reason to doubt that Plaintiffs possess Article III standing to bring such a claim.

Amended Complaint fails to plead any theory for the claim, let alone a plausible one.  The Court therefore dismisses the claim to that extent.[6]

### III. Quasi-Contract Claim

Under New York law, "[t]he theory of an action in quasi contract rests upon the equitable principle that a person shall not be allowed to enrich himself unjustly at the expense of another. It is an obligation which the law creates, *in the absence of any agreement*, when and because the acts of the parties or others have placed in the possession of one person money, or its equivalent, under such circumstances that in equity and good conscience he ought not to retain it."  *State v. Barclays Bank of N.Y., N.A.*, 563 N.E.2d 11, 15 (N.Y. 1990) (internal quotation marks, emphasis, and alterations omitted) (italics added).  Accordingly, a party cannot recover damages under a quasi-contract theory "where an express contract covers the subject matter."  *City of Yonkers v. Otis Elevator Co.*, 844 F.2d 42, 48 (2d Cir. 1988).  But neither the Federal Rules of Civil Procedure nor New York law prevents a plaintiff from pleading a quasi-contract claim in the alternative to a contract claim.  *See* Fed. R. Civ. P. 8(d) (authorizing a party to "state as many separate claims . . . as it has, regardless of consistency" and to "set out 2 or more statements of a claim . . . alternatively or hypothetically, either in a single count . . . or in separate ones"); *Winick Realty Grp. LLC v. Austin & Assocs.*, 857 N.Y.S.2d 114, 115 (N.Y. App. Div. 2008) ("[S]ince plaintiff is entitled to plead inconsistent causes of action in the alternative, the quasi-contractual claims are not precluded by the pleading of a cause of action for breach of an oral agreement."); *see also, e.g., U.S. Bank Nat'l Ass'n v. Bank of Am., N.A.*, No. 12-CV-4873, 2013 WL 2253923,

---

[6]     If Plaintiffs elect to seek leave to amend to assert a standalone claim by WCS against Genco, they need not—contrary to Genco's argument—"attach the alleged assignment itself or any evidence of it," Dkt. 25 (Reply in Supp. of MTD) at 6.  The Amended Complaint alleges that "WCS assigned to Pure Diets all rights, title and interest in any claims it may have against Defendant Genco" relating to the sugar-importation snafu.  Dkt. 14 (Am. Compl.) ¶ 26.  At this stage, the Court must accept that allegation as true.  *See, e.g., Gibbons*, 703 F.3d at 599.

at *2 (S.D.N.Y. May 22, 2013) ("[A] plaintiff need not use particular words to plead in the alternative, so long as it can be reasonably inferred that this is what the plaintiff was doing." (internal quotation marks and alterations omitted)).

Notwithstanding the legal ability to plead quasi-contract in the alternative to breach of contract, Plaintiffs have pleaded themselves out of stating a valid quasi-contract claim. Count Two alleges the existence of an "agreement between Genco and WCS" that governed Genco's obligations to Pure Diets India (via its agent WCS) regarding the sugar. Dkt. 14 (Am. Compl.) ¶ 33. The existence of such an agreement forecloses any quasi-contract claim as a matter of law. *See, e.g.*, *City of Yonkers*, 844 F.2d at 48; *see also, e.g.*, *Samuels v. Old Kent Bank*, No. 96 C 6667, 1997 WL 458434, at *14-15 (N.D. Ill. Aug. 1, 1997) (applying Illinois law, dismissing alternative unjust-enrichment claim that expressly incorporated separate contract claim's allegation that a valid contract existed between the parties); *G-I Holdings, Inc. v. Baron & Budd*, 238 F. Supp. 2d 521, 536 & n.4 (S.D.N.Y. 2002) (applying New York law, permitting equitable claim to be pleaded in the alternative to contractual claim but citing *Samuels* for proposition that equitable claim's incorporation of contract allegation would render equitable claim defective). Count Two must therefore be dismissed.

As to Organic Foods, Count Two is fatally defective for another, separate reason: it does not explain how a breach of any quasi-contractual relationship between Genco and Pure Diets India (via its agent WCS) would entitle Organic Foods to recover damages. *See* Dkt. 14 (Am. Compl.) ¶ 36 ("As a further direct and proximate result of Genco's breach of quasi contract, Plaintiff Organic has been damaged . . . ."). Therefore, to the extent Count Two purports to state a quasi-contract claim by Organic Foods against Genco, it fails to do so.[7]

---

[7]    Because the Court cannot consider Pure Diets India's criminal complaint and Wisconsin briefing in resolving this motion to dismiss, *see supra* Pt. I, the Court rejects Genco's argument that Count Two of the

## IV.     Negligent-Misrepresentation Claim

To state a claim under New York law for negligent misrepresentation, a plaintiff must allege that "(1) the defendant had a duty, as a result of a special relationship, to give correct information; (2) the defendant made a false representation that he or she should have known was incorrect; (3) the information supplied in the representation was known by the defendant to be desired by the plaintiff for a serious purpose; (4) the plaintiff intended to rely and act upon it; and (5) the plaintiff reasonably relied on it to his or her detriment." *Hydro Inv'rs, Inc. v. Trafalgar Power Inc.*, 227 F.3d 8, 20 (2d Cir. 2000) (citations omitted). Count Three of the Amended Complaint, which is brought on behalf of Pure Diets India only,[8] fails on at least the first and second of these elements.

The Amended Complaint fails to allege any prior relationship between Genco and Pure Diets India or its agent WCS, let alone facts that plausibly show a relationship of trust or confidence triggering an "exceptional duty" to "speak with care" during negotiations, *Kimmell v. Schaefer*, 675 N.E.2d 450, 454 (N.Y. 1996). Indeed, the Amended Complaint's narrative of WCS's discussions with Genco ahead of the sugar shipments, *see* Dkt. 14 (Am. Compl.) ¶¶ 19, 38, as well as the email communications that Plaintiffs append to their opposition to Genco's motion, *see* Dkt. 24 ex. A, suggest nothing more than a "relationship . . . typical of an arm's length transaction," which is insufficient to support a negligent-misrepresentation claim, *Herrick v. Grindr, LLC*, 306 F. Supp. 3d 579, 599 (S.D.N.Y. 2018); *see also, e.g.*, *Kimmell*, 675 N.E.2d at 454 ("Since a vast majority of commercial transactions are comprised of . . . 'casual'

---

Amended Complaint fails to state a claim because it is contradicted by an attachment to the criminal complaint, *see* Dkt. 18 (Mem. in Supp. of MTD) at 10.

[8]     Count Three seeks to recover damages suffered by Pure Diets India only. *See* Dkt. 14 (Am. Compl.) ¶ 42. The Court therefore treats Count Three as asserting a claim by Pure Diets India only, not any cause of action by Pure Diets India as assignee of WCS and not any cause of action by Organic Foods.

statements and contacts, we have recognized that not all representations made by a seller of goods or provider of services will give rise to a duty to speak with care.").  Plaintiffs' opposition to Genco's motion fares no better: it regurgitates Count Three's text but fails to point to any facts from which the Court could conclude that the relationship between WCS and Genco was anything more than that "typical of an arm's length transaction," *Herrick*, 306 F. Supp. 3d at 599; *see* Dkt. 24 (Mem. in Opp. to MTD) at 21-23.[9]

Count Three is defective in another respect: although it alleges that Genco represented to WCS that Genco "had sufficient experience and expertise to facilitate the transportation logistics required of 6,900 metric tons of organic sugar," that "it could promptly handle the volume" of the sugar, and that "it had sufficient inland transportation carrier base to handle the aforesaid cargo volume," Dkt. 14 (Am. Compl.) ¶ 38, the Complaint nowhere explains how those representations were both false and knowingly or negligently so, *see Hydro Inv'rs*, 227 F.3d at 20 (requiring plaintiff to plead and prove that "the defendant made a false representation that he or she should have known was incorrect").  Nor can the Court piece together Plaintiffs' theory on this point from the Amended Complaint's other allegations.  Those allegations, although

---

[9]    Plaintiffs' briefing suggests that their claim is analogous to one asserted in *MEI International, Inc. v. Schenkers International Forwarders, Inc.*, 807 F. Supp. 979, 985-86 (S.D.N.Y. 1992).  *See* Dkt. 24 (Mem. in Opp. to MTD) at 22-23.  *MEI*, however, applied a capacious special-relationship standard adopted by the Second Circuit in the absence of on-point New York authority—a position that has since been abrogated by the New York Court of Appeals.  *See* 807 F. Supp. at 985-86 (citing *Mallis v. Banker's Tr. Co.*, 615 F.2d 68, 82-83 (2d Cir. 1980) ("[W]e predict that New York courts, when directly confronted with the issue, would hold that the Restatement's requirements that the seller be acting in the course of his business, that the information be supplied for the guidance of the buyer, and that the buyer justifiably relied on it, establish a sufficient relationship of duty between buyer and seller to support an action for negligent misrepresentation.")); *Kimmell*, 675 N.E.2d at 454 ("Since a vast majority of commercial transactions are comprised of . . . 'casual' statements and contacts, we have recognized that not all representations made by a seller of goods or provider of services will give rise to a duty to speak with care . . . . Rather, liability for negligent misrepresentation has been imposed only on those persons who possess unique or specialized expertise, or who are in a special position of confidence and trust with the injured party such that reliance on the negligent misrepresentation is justified."); *see also Qatar Nat'l Navigation & Transp. Co. v. Citibank, N.A.*, No. 89-CV-464, 1998 WL 516117, at *15-16 (S.D.N.Y. Aug. 20, 1998) (recognizing that "[t]o the extent that *MEI* relies upon *Mallis*'s construction of New York law, it furnishes no support [for the existence of a special relationship], because the rationale of *Mallis* is contrary to that subsequently articulated by the New York Court of Appeals in *Kimmell*").  *MEI* is therefore inapposite here.

sufficient to raise a reasonable inference that Genco breached its obligations under its purported

contract with WCS, *see supra* Pt. II, are too vague for the Court to deduce how Genco's alleged

representations to WCS regarding Genco's capabilities departed from reality. Genco's alleged

failure, in other words, to clear the sugar through U.S. Customs so that it was eligible for the

reduced-duty program raises a reasonable inference that Genco breached its obligations under an

alleged contract whose express object was to ensure the sugar cleared Customs in time to receive

a reduced duty. That is why Count One states a claim for breach of contract. But the mere

(alleged) fact that Genco said it could timely clear the sugar through Customs and failed to do so

is not enough to raise a plausible inference that Genco knowingly or negligently misrepresented

its capabilities to WCS *ex ante*.

Because Count Three fails to plead the first and second elements of a negligent-

misrepresentation claim, Count Three is dismissed.

## V.     Negligence Claim

The Court next considers Plaintiffs' negligence claim.[10] "Under New York law, a breach

of contract will not give rise to a tort claim unless a legal duty independent of the contract itself

has been violated. . . . Such a legal duty must spring from circumstances extraneous to, and not

constituting elements of, the contract, although it may be connected with and dependent on the

contract." *Bayerische Landesbank v. Aladdin Capital Mgmt. LLC*, 692 F.3d 42, 58 (2d Cir.

2012) (internal quotation marks omitted). "If . . . the basis of a party's claim is a breach of solely

contractual obligations, such that the plaintiff is merely seeking to obtain the benefit of the

contractual bargain through an action in tort, the claim is precluded as duplicative." *Id.*

---

[10]     Count Four seeks to recover damages suffered by Pure Diets India only. *See* Dkt. 14 (Am. Compl.) ¶ 46.
As with Count Three, the Court therefore interprets Count Four as asserting a claim by Pure Diets India only, not
any cause of action by Pure Diets India as assignee of WCS and not any cause of action by Organic Foods.

As pleaded, Plaintiffs' negligence claim rests solely on Genco's alleged breach of an obligation that arises entirely from a contract: Count Four alleges that by "agreeing to carry out the Logistics Services" necessary to import the sugar into the United States, "Genco obligated itself . . . to carry out the Logistics Services as would a reasonably competent third party logistics provider." Dkt. 14 (Am. Compl.) ¶ 44. It then goes on to assert that Genco's "failure to timely and competently perform the Logistics Services *constitutes a breach of the duties it undertook* towards Plaintiff Pure Diets and/or its assignor WCS." *Id.* ¶ 45 (emphasis added). From these allegations it is apparent that Count Four is anchored in Genco's purported breach of obligations that are solely contractual and that Plaintiffs are "merely seeking to obtain the benefit of the [alleged] contractual bargain through an action in tort." *Bayerische Landesbank*, 692 F.3d at 58. The claim is, therefore, foreclosed as a matter of law.

Plaintiffs are correct that, generally speaking, Fed. R. Civ. P. 8(d)(2) permits a plaintiff to plead a negligence claim in the alternative to a breach-of-contract claim where the existence of a valid contract is disputed. *See* Dkt. 24 (Mem. in Opp. to MTD) at 24 ("[I]ssue has not be joined, and [Genco] has not admitted the existence of a contract between itself and WCS."). The Court has acknowledged as much with respect to Plaintiffs' would-be quasi-contract claim. *See supra* Pt. III. But Plaintiffs have once again pleaded themselves out of the ability to state a plausible negligence claim because Count Four affirmatively alleges that Genco's alleged negligence arises from its breach of obligations that exists solely because of its purported contract with WCS. *See* Dkt. 14 (Am. Compl.) ¶ 44-45. The claim is, therefore, self-defeating, even if Pure Diets India intended to plead negligence in the alternative to breach of contract. *See Samuels*, 1997 WL 458434, at *14-15.

Because Count Four rests on Genco's alleged breach of a duty arising solely from a purported contract, Count Four is dismissed.[11]

## VI.     Settlement in the India Lawsuit

Genco asserts that "any settlement in the India lawsuit precludes double recovery here." Dkt. 18 (Mem. in Supp. of MTD) at 13 (capitalization altered); *see also* Dkt. 25 (Reply in Supp. of MTD) at 10 (reiterating same).  To the extent Genco means to suggest that all or part of this action must be dismissed under Rule 12(b)(6) in light of a settlement between Pure Diets India and WCS, Genco has submitted no judicially noticeable materials evidencing such a settlement or demonstrating a risk of double recovery that would foreclose any of Plaintiffs' claims as a matter of law.  And to the extent Genco means to argue that Plaintiffs are obligated to produce in

---

[11]     Because the Court will give Pure Diets India an opportunity to seek leave to amend Count Four, it takes this opportunity to reject Genco's argument that Count Four is barred as a matter of law by New York's statute of limitations.  *See* Dkt. 18 (Mem. in Supp. of MTD) at 13; Dkt. 25 (Reply in Supp. of MTD) at 9.  It is unclear to the Court, first of all, what authority Genco relies upon for the proposition that a negligence claim not resulting in personal injury is subject to a three-year statute of limitations under New York law.  And even if Genco is correct on that point, its argument hinges on Pure Diets India's purported statement in its briefing in the Eastern District of Wisconsin that it incurred demurrage and detention fees on the sugar beginning on March 16, 2015 (more than three years before this action was filed on April 6, 2018, *see* Dkt. 1 (Compl.)).  Because the Court may not consider the Wisconsin briefing at this stage, however, *see supra* Pt. I, it may not dismiss Count Four on this ground.  The Amended Complaint avers that Genco's alleged "fail[ure] to timely and competently provide the Logistics Services which it had agreed to provide to Pure Diets and/or WCS . . . continued through at least July 1, 2015"—a date within the purported three-year statute of limitations.  Dkt. 14 (Am. Compl.) ¶ 23.  The Amended Complaint includes no other dates relevant to determining when Plaintiffs' negligence claim accrued.  Taking the Amended Complaint's allegations as true, therefore, and recognizing that the statute of limitations provides an affirmative defense on which Genco bears the burden, *see* Fed. R. Civ. P. 8(c), there is no basis on which to dismiss Count Four as barred by the statute of limitations.  The Court therefore need not resolve the parties' arguments about whether the continuing-tort doctrine saves Count Four, *see* Dkt. 24 (Mem. in Opp. to MTD) at 25-26; Dkt. 25 (Reply in Supp. of MTD) at 9—at least not at this stage of the litigation.

In its opposition to Genco's motion, Plaintiffs appear to agree with Genco that the Amended Complaint alleges that Genco's tortious conduct began on March 16, 2015.  *See* Dkt. 24 (Mem. in Opp. to MTD) at 25 (arguing that the statute of limitations "should be evaluated on the Amended Complaint's allegation that [Genco] was committing a continuing tort from March 16, 2015, until at least July 1, 2015, with respect to its performance of the Logistics Services").  Any such allegation—and indeed, any mention of March 16, 2015—is absent from the Amended Complaint.  The Court notes the possibility, however, that Plaintiffs' statement on this point *may* be admissible as evidence favoring Genco's statute-of-limitations defense at later stages of this litigation.  *See Hausler*, 127 F. Supp. 3d at 37 ("When a party makes a judicial admission, that party normally is bound by that admission throughout the course of the proceeding . . . ." (internal quotation marks and brackets omitted)).  The Court expresses no opinion on that question here.

discovery any settlement agreement between Pure Diets India and WCS to Genco, a ruling on that issue is premature—particularly because discovery has not yet begun, *see* Dkt. 13. Genco remains free, of course, to renew its arguments regarding the discoverability of the India settlement (if one exists) and its impact (if any) on the merits of Plaintiffs' claims at later phases of the litigation.

**CONCLUSION**

For the foregoing reasons, Genco's motion to dismiss [Dkt. 17] is GRANTED IN PART and DENIED IN PART. Specifically, Counts Two, Three, and Four are dismissed in their entirety, and Count One is dismissed to the extent it purports to assert (a) a breach-of-contract claim by Plaintiff Organic Foods against Genco or (b) a breach-of-contract claim against Genco by WCS, asserted on WCS's behalf by its assignee, Plaintiff Pure Diets India.

Because Plaintiffs elected to oppose Genco's motion rather than amend their Amended Complaint in response to the motion, Plaintiffs may make further amendments in response to this order only with the Court's permission. If Plaintiffs wish to seek leave to amend their Amended Complaint to correct the deficiencies identified above, they must, no later than **March 1, 2019**, (1) move for leave to file a Second Amended Complaint, (2) submit a proposed Second Amended Complaint, (3) submit a redline version of the proposed Second Amended Complaint showing differences between that document and the Amended Complaint [Dkt. 14], and (4) submit a memorandum of law explaining how the proposed Second Amended Complaint corrects the deficiencies identified above and showing cause why the motion for leave should be granted. *See, e.g.*, *O.F.I. Imps. Inc.*, 2017 WL 3084901, at *6. If Plaintiffs do not wish to seek leave to further amend, they must submit a letter no later than **March 1**, **2019**, advising the Court

of that fact.  If Plaintiffs do not seek leave to amend consistent with these procedures, this litigation will proceed on Pure Diets India's breach-of-contract claim against Genco only.

If, consistent with the above procedures, Plaintiffs file a motion for leave to file a Second Amended Complaint, Genco must file any opposition to that motion (or a letter stating an intent not to oppose it) no later than **March 29, 2019**.  Plaintiffs may file a reply in support of their motion no later than **April 5, 2019**.

Discovery remains stayed *sine die*.

The parties are reminded that the Court is happy to refer them to the assigned Magistrate Judge for a settlement conference upon a joint request.


**SO ORDERED.**


**Date:  February 4, 2019**
       **New York, NY**

_____
**VALERIE CAPRONI**
**United States District Judge**